STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-449 consolidated with 06-450

STATE OF LOUISIANA

VERSUS

WARREN TODD DOSSMAN

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 119,707A & 120,850A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

GLENN B. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

AFFIRMED AS AMENDED WITH INSTRUCTIONS.

Hon. Charles A. Riddle, III
District Attorney, 12th JDC
P. O. Box 1200
Marksville, LA 71351-
(318) 253-6587
Counsel for Plaintiff/Appellee:
        State of Louisiana

**Norris Joseph Greenhouse**
**Assistant DA, 12th JDC**
**214 Main Street**
**Marksville, LA 71351**
**(318) 253-6394**
**Counsel for Plaintiff/Appellee:**
     **State of Louisiana**

**William Jarred Franklin**
**LA Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
     **Warren Todd Dossman**

**Warren Todd Dossman**
**A.B.D.C.**
**P. O. Box 250**
**Evergreen, LA 71333**
**In Proper Person:**
     **Warren Todd Dossman**

GREMILLION, Judge.

The Defendant, Warren Todd Dossman, was convicted of unauthorized entry of an inhabited dwelling, a violation of La.R.S. 14:62.3. After the State filed a motion requesting that Defendant be sentenced as a habitual offender, pursuant to La.R.S. 15:529.1(A)(1)(a), he was sentenced to serve six years at hard labor, without the benefit of parole, probation, or suspension of sentence. He now appeals his conviction and sentence asserting that the evidence was insufficient to support his conviction and that his sentence is unconstitutionally excessive. Additionally, Defendant claims that the trial court erred when it failed to instruct the jury that criminal trespass was a lesser responsive verdict to the charged crime of unauthorized entry of an inhabited dwelling. For the following reasons, we affirm Defendant's conviction and sentence, as amended with instructions.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent. First, the record does not indicate Defendant was advised of his right to remain silent or his right to have the State prove its case against him before he was adjudicated a habitual offender. We have found such error to be harmless when the defendant is adjudicated a habitual offender after a full hearing, and the defendant does not testify or acknowledge his status as a habitual offender. *See State v. Alexander*, 05-276, 05-277 (La.App. 3 Cir. 11/2/05), 916 So.2d 303.

In the present case, Defendant denied the habitual offender allegations, a hearing was held, and he was adjudicated a second habitual offender. Although the

1

State presented evidence to prove Defendant's prior conviction of simple criminal damage to property, we note that he stipulated to his *second* or the *instant* conviction. This stipulation did not constitute an admission of Defendant's status as a habitual offender; thus, the stipulation does not affect our present harmless error analysis because the only disputable issue at a habitual offender hearing is whether or not the defendant committed the *prior* conviction(s) alleged in the charging instrument:

> In habitual offender cases, the charges to be defended against are the *prior* convictions alleged. A defendant is unable to defend against the recent underlying offense(s) because the trial court has the right to take judicial notice of any prior proceeding in cases over which it presided. *State v. Valentine*, 397 So.2d 1299 (La.1981).

*State v. Freeman,* 00-238, p. 12 (La.App. 3 Cir. 10/11/00), 770 So.2d 482, 490, *writ denied*, 00-3101 (La. 10/5/01), 798 So.2d 963.

The trial court in the present case presided over the trial of Defendant's most recent conviction, as well as the habitual offender proceeding. Thus, the trial court had the right to take judicial notice of Defendant's second or most recent conviction. Considering this fact, Defendant's stipulation to his second or most recent conviction was a stipulation to a non-disputable fact and did not constitute an admission to his habitual offender status. Accordingly, we find that the trial court's failure to advise Defendant of his rights in the instant case was harmless error because a hearing was held at which he was adjudicated a second habitual offender without acknowledging his habitual offender status.

Second, the trial court improperly denied Defendant parole eligibility. The trial court sentenced Defendant to six years at hard labor without benefit of probation, *parole*, or suspension of sentence. Although Section G of the habitual

2

offender statute requires all enhanced sentences to be imposed without benefit of probation or suspension of sentence, it does not authorize the trial court to impose enhanced sentences without benefit of parole. La.R.S. 15:529.1(G). "[T]he restrictions on parole eligibility imposed on multiple offender sentences under La.R.S. 15:529.1 'are those called for in the reference statute.'" *State v. Tate*, 99-1483, pp. 1-2 (La. 11/24/99), 747 So.2d 519, 520 (citation omitted). The penalty provision for unauthorized entry of an inhabited dwelling, the reference statute in the present case, does not authorize the trial court to impose any portion of the sentence without benefit of parole. La.R.S. 14:62.3. Thus, the trial court improperly denied parole eligibility. Accordingly, we amend Defendant's sentence to delete the denial of parole eligibility. *See State v. Buckley,* 02-1288 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193 and *State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694. Further, we instruct the trial court to make an entry in the minutes reflecting this change. *See Tate*, 747 So.2d 519.

**SUFFICIENCY OF EVIDENCE**

Defendant asserts on appeal that the evidence presented was insufficient to support his conviction. In support of this assignment of error, Defendant argues that the State failed to prove that the structure he allegedly entered was an inhabited dwelling or place of abode. He also argues that he did not actually enter the structure.

In determining sufficiency of the evidence on appeal, this court has previously stated:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

*State v. Touchet*, 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902

(quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724,

726-27). "The trier of fact makes credibility determinations and may, within the

bounds of rationality, accept or reject the testimony; thus, a reviewing court may

impinge on the 'fact finder's discretion only to the extent necessary to guarantee the

fundamental due process of law.'" *State v. Johnson*, 03-1228, pp. 4-5 (La. 4/14/04),

870 So.2d 995, 998 (quoting *State v. Sylvia,* 01-1406, p. 2-3 (La. 4/9/03), 845 So.2d

358, 361).

Defendant was convicted of unauthorized entry of an inhabited dwelling,

as prohibited by La.R.S. 14:62.3(A), which states the following in pertinent part:

"Unauthorized entry of an inhabited dwelling is the intentional entry by a person

without authorization into any inhabited dwelling or other structure belonging to

another and used in whole or in part as a home or place of abode by a person."

4

Defendant argues that the State did not prove that the structure involved was actually an inhabited dwelling or place of abode. He states that to be an "inhabited dwelling" within the statute, a person must actually be living in the structure, deem it to be a place of abode, and treat it as such. In support of these statements, he cites *State v. Smith*, 28,280 (La.App. 2 Cir. 6/26/96) 677 So.2d 589, *writ denied*, 97-850 (La. 11/14/97), 703 So.2d 1287, and *State v. Black*, 25,527 (La.App. 2 Cir. 12/1/93), 627 So.2d 741.

However, we note that *Smith* says that a house may be classified as inhabited if it is only lived in part of the time, even where the inhabitant does not have an intent to remain. *Smith*, 677 So.2d 589. The *Smith* court pointed to jurisprudence which determined that a rented motel room could be considered an inhabited dwelling, citing *State v. Surtain*, 529 So.2d 1375 (La.App. 5 Cir. 1988). Additionally, the *Smith* court discussed the *Black* ruling, stating that "this court held that a house which is lived in for only part of the time may be classified as 'inhabited' for the purposes of the inhabitation requirement of the burglary statute." *Smith*, 677 So.2d at 592.

At approximately 2:00 a.m. on June 8, 2003, Defendant went to the home of Flossie Simmons in Bunkie, Louisiana. Flossie lived in the house with her son, her daughter, Joyce Simmons, and Joyce's two sons. Defendant had previously had a relationship with Joyce and is the father of her sons. During the trial, Flossie and Joyce both testified that they were inside the structure, which they both called an apartment, at the time of the incident. The women described the building as a wash room that had been renovated to include a bathroom and an area with a sofa, chair, television, and air conditioner. Flossie stated that Joyce often entertained

5

friends in the apartment where she could have more privacy and slept there even though she also maintained a bedroom in the main house and usually slept there. Joyce also testified that she often entertained in the apartment and occasionally slept there, although she did say on cross-examination that she basically lived in the main house. Additionally, Defendant admitted in his own testimony that he went to the apartment and pushed the air conditioner through the wall in order to see inside because he wanted to see if Joyce was entertaining a boyfriend there. There was no testimony offered at trial to suggest that Defendant went to the main house prior to approaching the apartment. Consequently, Defendant's actions demonstrated that he went there because he was aware, at least, that Joyce spent sufficient time in the apartment and that she would be likely to be found there if she was entertaining. Finally, we note that Joyce and Flossie were actually in the apartment when this episode occurred.

As the factfinder, it was well within the province of the jury to accept Joyce and Flossie's testimony that Joyce spent time entertaining there and that she occasionally slept there, as well as in the main house. "It is not uncommon for people to have two places of abode, and for both of them to be deemed inhabited for purposes of LSA-R.S. 14:62.2." *Black*, 627 So.2d at 746. The State presented sufficient evidence that the apartment was used, at least part-time, as a place of abode for Joyce. Accordingly, we hold that the State met its burden in proving that the structure constituted an inhabited dwelling.

Next, Defendant argues that insufficient evidence was presented to support a finding that he actually entered the apartment. He points out that both

Flossie and Joyce testified that the apartment door was locked and that he did not have a key. He also suggests that the evidence supports his account of the events because he testified that he gave his watch to Flossie immediately before his arrest and she actually had it and presented it to the court.

Flossie testified that after Defendant pushed the air-conditioning unit through the wall, he stuck his arm through the hole and began to threaten Joyce. She also testified that Defendant then went around to the door of the apartment and entered the main room while Joyce hid in the apartment's bathroom. Flossie stated that while in the apartment, Defendant hit her in the eye and that she "tussel[ed]" with him. She testified that she then convinced him to leave the apartment and go outside with her, giving Joyce a chance to run from the apartment to the main house and contact police.

Joyce testified that she was sitting in the apartment with her mother when the air-conditioning unit came through the wall. She said that she saw that Defendant "was at the window attempting to reach in the window," so she ran to hide in the bathroom. Joyce testified that from the bathroom, she heard Defendant threatening to kill her and "the door being kicked in and a lot of commotion after that." She stated that she also "felt and also heard a big bam on the door like he was trying to come in behind me like three or four times on the bathroom door." However, on cross-examination, she stated that she never saw Defendant enter the apartment and that her mother, due to her age, occasionally becomes confused or forgetful when she is nervous.

7

Defendant testified that on the night of the incident he had heard that Joyce was entertaining a man and that he went to her house to see who the man was. He admitted that he pushed the air-conditioning unit through the wall, but stated that he did not enter the apartment. He said that when he saw that there was no other man in the apartment, he walked around to the front of the house, Flossie met him outside, and the two conversed. He stated that when the police arrived, he gave his keys and watch to Flossie to hold in case of his arrest.

Because it is the role of the jury as the factfinder to make credibility determinations, we will not question those determinations beyond the standard for evaluating the sufficiency of evidence outlined in *Jackson*. *See Touchet*, 897 So.2d 900. "A victim's or eyewitness's testimony alone is usually sufficient to support a verdict." *State v. Davis*, 02-1043, p. 4 (La. 6/27/03), 848 So.2d 557, 559; *State v. Hills*, 99-1750, p. 8, n.8 (La. 5/16/00), 761 So.2d 516, 522.

The jury heard the testimony above and convicted Defendant as charged. Because Defendant was not inside the apartment when police arrived, the jury had to determine whether he had entered it based on the accounts presented by Defendant, Flossie, and Joyce. The jury apparently believed the testimony of Flossie and Joyce that Defendant entered the apartment at least once. In viewing the evidence in a light most favorable to the prosecution, we find that the jury reasonably determined that the State proved beyond a reasonable doubt all of the elements of the crime of unauthorized entry of an inhabited dwelling. Accordingly, this assignment of error is without merit.

8

## FAILURE TO GIVE A JURY INSTRUCTION

For this assignment, Defendant argues that the trial court failed to instruct the jury that criminal trespass is a lesser included offense of unauthorized entry of an inhabited dwelling. Defendant argues that his conviction should be reversed because the jury may have chosen the lesser responsive verdict, had they been advised of it.

Louisiana Code of Criminal Procedure Article 803 requires a trial court to advise the jury of the law applicable to all offenses charged, as well as any other offenses for which the accused could be found guilty under La.Code Crim.P. arts. 814 and 815. Because Article 814 does not provide any statutory responsive verdicts for unauthorized entry of an inhabited dwelling, the provisions of Article 815 apply. Article 815 states that in those cases not provided for by Article 814, the responsive verdicts are guilty, not guilty, or "[g]uilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor."

In support of his argument, Defendant points to *State v. Simmons*, 01-293 (La. 5/14/02), 817 So.2d 16. In that case, the defendant was charged with unauthorized entry of an inhabited dwelling. The facts of that case showed that the defendant "forced his way into the apartment of his ex-girlfriend and smashed her television set with a mallet." *Id.* at 18. Although the defendant requested that the trial court add criminal trespass to the list of responsive verdicts, the trial court denied the request. The defendant was subsequently found guilty of attempted unauthorized entry of an inhabited dwelling. The court of appeal affirmed the

9

conviction, finding that the trial court had properly refused the lesser jury charge because the defendant had not presented a written request for the charge prior to trial.[1]  Considering the issue, the Louisiana Supreme Court stated:

> Lesser and included offenses are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged.  *State v. Porter*, 93-1106 (La.7/5/94), 639 So.2d 1137; *State v. Dufore*, 424 So.2d 256 (La.1982); *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982).  Stated another way, "if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive."  *State v. Simmons*, 422 So.2d 138, 142 (La.1982) (quoting *State v. Poe*, 214 La. 606, 38 So.2d 359, 363 (1948) (on rehearing)).  Consequently, evidence which would support a conviction of the charged offense would necessarily support a conviction of the lesser and included offense.  *Dufore* at 258; *Elaire*, at 248-49.  Because this is the case, when the defendant requests that the jury be instructed on the law applicable to an offense which is truly a lesser and included offense of the charged offense, the trial court has no discretion to refuse to give the requested instruction.  *Dufore* at 258.

*Id.* at 19.

The supreme court then determined that Simmons' request for the criminal trespass instruction was a responsive verdict pursuant to Article 815 and was not a special charge which required advance, written notice pursuant to La.Code Crim.P. art. 807.  After noting that the defendant had specifically requested that the criminal trespass charge be given to the jury, the supreme court said that criminal trespass is a lesser and included offense of unauthorized entry of an inhabited dwelling.  The supreme court explained:

> Unauthorized entry of an inhabited dwelling, the charged offense, is defined by La. R.S. 14:62.3 as "the intentional entry by a person without authorization into any inhabited dwelling or other

---

[1]  Louisiana Code of Criminal Procedure Article 807 mandates that where either the defendant or the state would request any special charges be given to the jury, such requests must be made in writing prior to trial.

structure belonging to another and used in whole or in part as a home or place of abode by a person." Likewise, La. R.S. 14:63 provides for the crime of criminal trespass in pertinent part as follows:

> A. No person shall without authorization intentionally enter any structure, watercraft, or movable.
>
> B. No person shall intentionally enter immovable property owned by another:
>
>> (1) When he knows his entry is unauthorized, or
>>
>> (2) Under circumstances where he reasonably should know his entry is unauthorized.

Criminal trespass thus includes the unauthorized and intentional entry of any structure, elements which are also found in the crime of unauthorized entry of an inhabited dwelling. We cannot imagine a situation in which a person can be guilty of unauthorized entry of an inhabited dwelling without also being guilty of criminal trespass. We therefore find that criminal trespass is a lesser included offense and a responsive verdict to a charge of unauthorized entry of an inhabited dwelling.

> The trial court erred in denying the defendant's request to give the jury on [sic] instruction on criminal trespass. This error was not harmless because there is a reasonable possibility that the error affected the outcome. Given the fact that the jury, after requesting further instruction, returned a verdict of the only lesser included offense offered, it is entirely possible that the jury would have returned a verdict for the lesser misdemeanor offense of criminal trespass if that charge had been given. This difference is significant since defendant would have escaped sentencing as a multiple offender under La. R.S. 15:529.1 if the jury had convicted him of criminal trespass, a misdemeanor. Defendant's conviction for attempted unauthorized entry of an inhabited dwelling must therefore be reversed.

*Id.* at 20-21.

Based on *Simmons'* holding that criminal trespass is a lesser included

offense of unauthorized entry of an inhabited dwelling, Defendant herein requests

that we find that the trial court erred in not instructing the jury on criminal trespass

11

and consequently reverse his conviction. Defendant argues that as in *Simmons*, a reasonable possibility exists that the jury would have convicted him of criminal trespass, a misdemeanor offense, and he would not have been sentenced pursuant to the habitual offender statute.

However, the instant matter can be distinguished from *Simmons* for two reasons. First, the jury found Defendant guilty of unauthorized entry of an inhabited dwelling by a unanimous vote. The trial court's instructions read to the jury included responsive verdicts for unauthorized entry of an inhabited dwelling, attempted unauthorized entry of an inhabited dwelling, and not guilty. In *Simmons*, the jury was offered the same three potential responsive verdicts as in the instant matter, but convicted Simmons of *attempted* unauthorized entry (emphasis added). The *Simmons* court noted in its opinion that the attempt verdict was the only lesser included offense provided, suggesting the possibility that the jury may have chosen the criminal trespass misdemeanor verdict had it been offered. As in *Simmons*, the jury in the instant matter had the option of choosing the lesser included attempt verdict; however, it did not do so. Instead, the jury unanimously found Defendant guilty of the offense as charged. In that regard, we find that the failure of the trial court to give the jury charge is harmless error.

Next, the instant matter is distinguishable from *Simmons* because it is unclear from the record whether Defendant requested the criminal trespass instruction be provided or entered an objection when it was not. As stated above, the *Simmons* court found that a request for a criminal trespass instruction is a responsive verdict and, therefore, need not be made in writing. However, when the supreme

12

court considered the merits of Simmons' assignment, it "note[d] defendant specifically asked the trial court to charge the jury on the law applicable to the offense of criminal trespass." *Id.* at 20.

In *State v. Hernandez*, 02-340 (La.App. 5 Cir. 7/30/02), 824 So.2d 529, the appellate court relied heavily on *Simmons* in a similar matter. In *Hernandez*, the defendant was sentenced as a subsequent offender based on a conviction of unauthorized entry of an inhabited dwelling. The *Hernandez* jury also was not instructed that criminal trespass was a responsive verdict. Due to the trial court's refusal to include criminal trespass as a responsive verdict, the fifth circuit reversed the defendant's conviction and remanded the matter for a new trial. Discussing *Simmons*, the *Hernandez* court stated, "[i]n this case, defendant likewise specifically requested the trial court to charge the jury on the law applicable to the offense of criminal trespass." *Id.* at 530.

Turning to the instant matter, we cannot say that the record affirmatively reflects that Defendant requested, either orally or in writing, that a criminal trespass instruction be given to the jury, nor does the record reflect that he lodged an objection when one was not given. The trial transcript reveals that the following discussion took place immediately after the assistant district attorney finished his rebuttal closing argument and before the trial court charged the jury:

(Closing arguments concluded.)

BY THE COURT:
All right thank you. Counsels need to approach.

BENCH CONFERENCE - RECORDED - UNINTELLIGIBLE

BY THE COURT:

13

The attorneys have a right to look at the charges before I give them to you and give me any input they want.

We've had a charge conference [sic] any objections by the State as to the charges and verdict form that I intend to proceed with?

BY MS. MOREAU:
No objection, your Honor.

BY THE COURT:
O.K. Any objections by the defense?

BY MR. WILLIAMS:
What's that, Your Honor?

BY THE COURT:
We've had a charge conference, are there any objections to the proposed instructions?

BY MR. WILLIAMS:
Only the ones we discussed, Your Honor.

BY THE COURT:
All right, thank you.

COURT'S FINAL CHARGE TO JURY

Based on the excerpt above, it appears as though defense counsel had voiced some objection to the proposed instruction during the bench conference. However, the nature of the objections discussed is unclear as no record was made of those objections.

In order to preserve an issue for appeal, a party must make a contemporaneous objection. Louisiana Code of Criminal Procedure Article 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Louisiana courts have consistently recognized this as the contemporaneous objection rule, noting its dual purposes: "(1) to put the trial judge on notice of the alleged irregularity so that he

14

may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection." *State v. Potter*, 591 So.2d 1166, 1169, n.6 (La.1991), *writ denied*, 619 So.2d 574 (La. 6/18/93) (quoting *State v. Thomas*, 427 So.2d 428, 432 (La.1982)). *See also State v. Bias*, 95-541 (La.App. 3 Cir. 1/31/96), 674 So.2d 265; *State v. Stracener*, 94-998 (La.App. 3 Cir. 3/1/95), 651 So.2d 463, *writ denied,* 97-0696 (La. 11/7/97), 703 So.2d 1261.

Based on the excerpt above, we find that neither a request for the criminal trespass instruction nor an objection to its omission from the list of responsive verdicts appears in the record. Defendant did not reiterate any objections outside of the bench conference for the record, and we could not locate any other indication that an objection was formally entered into the record at any time before or after the jury had been excused for deliberations.

Louisiana Code of Criminal Procedure Article 801(C) states:

A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of the objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

Additionally, we note that in his appellate brief to this court, Defendant does not assert that the criminal trespass instruction was actually requested. He also does not make any assertion as to what objection, if any, was made during the bench conference. Instead, his entire argument relating to this assignment consists of a detailed analysis of the *Simmons* case and a brief factual comparison of the instant matter to *Simmons*. Consequently, recognizing that the record does not indicate that

15

Defendant specifically objected to the lack of a criminal trespass responsive verdict at trial and that he does not allege on appeal that one was made to preserve the issue, he may not raise the issue on appeal. *See* La.Code Crim.P. art. 801; *State v. Odle*, 02-226 (La.App. 3 Cir. 11/13/02), 834 So.2d 483, *writ denied*, 03-625 (La. 6/20/03), 847 So.2d 1219. Accordingly, this assignment of error is without merit.

**EXCESSIVE SENTENCE**

In his final assignment of error, Defendant asserts that the sentence imposed is unconstitutionally excessive. He filed a Motion to Reconsider in accordance with La.Code Crim.P. art. 881.1. Under Article 881.1, a defendant must file a motion to reconsider the sentence setting forth the specific grounds upon which the motion is based in order to raise any sentencing claims on appeal. *State v. Mims*, 619 So.2d 1059 (La.1993). In order to preserve a claim of constitutionally excessive sentence, the defendant need only claim that his sentence is excessive. *Id*.

In his Motion to Reconsider, Defendant argued that he should receive the minimum sentence for which he was eligible, which was three years. He argued that he had sympathy for his victims and that he had enrolled in anger management and substance abuse courses while incarcerated. Additionally, Defendant stated that if released, he would stay away from the victims and would be able to work to support his children.

However, he does not raise those arguments to this court, but instead asserts that his sentence was excessive because it was imposed pursuant to the felony unauthorized entry of an inhabited dwelling conviction. He asserts that "[t]here is a reasonable possibility that had the jury been instructed that criminal trespass was

16

a lesser and included offense, the jury would have convicted [him] of the misdemeanor charge of criminal trespass." He points out that such a misdemeanor conviction would have allowed him to escape sentencing as a multiple offender. Therefore, Defendant's argument on appeal appears to be that the failure of the trial court to include the criminal trespass jury charge resulted in an excessive sentence.

The supreme court, in *Mims*, 619 So.2d at 1059-60, held:

> If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness.

Therefore, Defendant's argument in support of this assignment is substantially the same as his argument relating to the former assignment. Because Defendant did file a Motion to Reconsider based on excessiveness and has not alleged any other new claims related specifically to sentencing, we will review the sentence under a bare excessiveness review.

We have set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 [p.5] (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v.*

17

*Cook*, 95-2784 [p. 3] (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-0838 (La. 2/1/02), 808 So.2d 331.

In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, we have held:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-0719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-0562 (La. 5/30/03), 845 So.2d 1061.

Louisiana Revised Statute 14:62.3 states that the penalty for unauthorized entry of an inhabited dwelling is a fine of not more than one thousand dollars or imprisonment with or without hard labor for not more than six years, or both. Defendant was also adjudged a second offender pursuant to La.R.S. 15:529.1(A)(1)(a), which authorizes "a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction[.]" Consequently, after the multiple offender determination, the Defendant faced a potential sentencing range of three to twelve years.

In sentencing Defendant, the trial court considered the nature of the crime and Defendant's background, especially as it related to the two victims in this matter. The trial court expressed concern regarding his past harassment of Joyce and his violation of a restraining order she had against him. In his reasons for sentencing, the trial court also noted Flossie's allegations that Defendant had pushed her and threatened to kill Joyce during the incident. At the Motion to Reconsider hearing, the trial court additionally noted a serious concern for Defendant's history of harassing Joyce and a concern that he would continue to pursue her if given a lesser sentence.

In *State v. Williams*, 32,993 (La.App. 2 Cir. 3/1/00), 754 So.2d 418, the Second Circuit affirmed a sentence of five years for a similar crime. In *Williams*, the defendant went to his girlfriend's apartment, but she told him she did not want to see him. The defendant kicked in the door of the apartment, entered, and had an argument with the victim. Although he physically restrained her, the victim managed to escape the apartment and contact a friend for assistance. The defendant was charged with unauthorized entry of an inhabited dwelling and, following a jury trial, received a five-year sentence.

In this case, Defendant's six-year sentence is a mid-range sentence. The trial court outlined its understanding of the history between Defendant and Joyce and was clear in its concern that Defendant could possibly continue to harass or otherwise threaten her, as evidenced by his violation of the restraining order. The trial court also considered other aggravating circumstances including the threats and pushing of Flossie during the incident. Consequently, we find that the sentence of

19

six years at hard labor was not excessive and that this assignment of error lacks merit.

## CONCLUSION

Defendant's conviction and sentence for the offense of unauthorized entry of an inhabited dwelling is affirmed. However, his sentence of six years at hard labor without the benefit of probation, parole, or suspension of sentence is amended to delete the denial of parole eligibility, and the trial court is instructed to make an entry in the minutes of this case to reflect this change.

**AFFIRMED AS AMENDED WITH INSTRUCTIONS.**