NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1255

STATE OF LOUISIANA

VERSUS

MARCUS GENE HOLLIER

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 74556
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

HABITUAL OFFENDER ADJUDICATION AFFIRMED;
REMANDED WITH INSTRUCTIONS.

Mark O. Foster, Attorney at Law
222 Adelaide Street
Natchitoches, LA 71457
(318) 572-5693
COUNSEL FOR DEFENDANT/APPELLANT:
    Marcus Gene Hollier

Roger P. Hamilton, Jr., Assistant District Attorney
Fifteenth Judicial District, Parish of Acadia
P. O. Box 288
Crowley, LA 70527
(337) 788-8831
COUNSEL FOR THE STATE OF LOUISIANA

**PAINTER, Judge.**

Defendant, Marcus Gene Hollier, appeals his adjudication as an habitual offender, alleging that the evidence was insufficient to establish that such adjudication was warranted. We affirm that adjudication.

### FACTS AND PROCEDURAL HISTORY

On February 17, 2009, the State filed a multiple offender bill of information alleging that Defendant had been convicted of distribution of methadone on October 28, 2008, and that Defendant had other felony convictions in addition to the methadone offense. On April 1, 2009, Defendant appeared with counsel for his arraignment on the multiple offender bill and pled not guilty. The defense then filed a motion to quash the habitual offender bill of information. In that motion, Defendant argued that the habitual offender bill should be suppressed because he was not fully advised during his prior guilty pleas that those guilty pleas could be used to enhance a future sentence. Defendant also asserted that his prior guilty pleas were unconstitutionally obtained as he was not properly *Boykinized* during those guilty pleas. Defendant filed a *pro se* motion to quash the bill of information on January 21, 2011.

Defendant appeared with counsel for his habitual offender hearing on January 26, 2011. Following presentation of the evidence at the hearing, the trial court adjudicated Defendant as a multiple offender, vacated Defendant's previously-imposed sentence on the underlying conviction, and resentenced Defendant to serve twenty years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant now appeals his habitual offender adjudication. We affirm the habitual offender adjudication but remand the matter to the trial court with instructions to provide Defendant with written notice of the delays set forth in La.Code Crim.P. art. 930.8 for seeking post-conviction relief on the underlying conviction for distribution of methadone and to correct the sentencing minutes by

striking the provision that the sentence be imposed without benefit of parole, probation, or suspension of sentence.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent concerning the leniency of the sentence. First, the sentence is illegally lenient because it is below the statutory minimum for a fourth offender. Second, the sentence is illegally lenient because it was not imposed at hard labor as required by the statute concerning the underlying conviction. However, since these issues have not been raised, we will not correct the errors.

There are two additional errors patent that require further action by the trial court. First, the court minutes of sentencing require correction. The minutes reflect that Defendant's twenty-year sentence was imposed without benefit of parole, probation, or suspension of sentence, but the transcript does not reflect that the trial court imposed this restriction. Accordingly, the trial court is ordered to correct the sentencing minutes to accurately reflect the sentence imposed.[1]

Second, the trial court misinformed Defendant that he had the right to seek post-conviction relief concerning claims about his habitual offender adjudication and sentence. Defendant asserts, in brief, that "[i]t was error patent for the trial court to advise Mr. Hollier that he had to appeal his habitual offender sentence by an application for post-conviction relief." Defendant states that neither the minutes of

---

[1]Section G of Louisiana Revised Statutes 15:529.1, the habitual offender statute, requires all enhanced sentences to be imposed without benefit of probation or suspension of sentence; it does not authorize the trial court to impose enhanced sentences without the benefit of parole. The restrictions on parole eligibility imposed on multiple offender sentences under La.R.S. 15:529.1 are those called for in the reference statute. *See State v. Tate*, 99-1483, (La. 11/24/99), 747 So.2d 519, and *State v. Dossman*, 06-449 (La.App. 3 Cir. 9/27/06), 940 So.2d 876, *writ denied*, 06-2683 (La. 6/1/07), 957 So.2d 174. Louisiana Revised Statutes 40:967 provides that only the first two years of a sentence imposed for distribution of methadone are to be served without the benefit of parole. Defendant's sentence is deemed to contain this restriction. *See* La.R.S. 15:301.1.

2

court nor the sentencing transcript properly informed Defendant of the delays for filing an appeal or an application for post-conviction relief. The trial court incorrectly told Defendant that he had to appeal his sentence through an application for post-conviction relief, which is why Defendant filed both an appeal and an application for post-conviction relief. Defendant asks this court to order the trial court to provide Defendant with written notice of the correct delays for filing an application for post-conviction relief.

The State responds that the trial court properly advised Defendant of his rights to post-conviction relief. The State advances, however, that if the advisement given by the trial court was inadequate, this court should request the trial court to properly advise Defendant.

The record shows that the trial court advised Defendant: "you have two (2) years post-conviction relief, that is, two (2) years from the date this judgment becomes final in order to appeal anything done here today." Defendant appealed his underlying conviction. Both this court and the Louisiana Supreme Court denied relief in 2010. Defendant did not seek rehearing; therefore, Defendant's conviction became final in 2010. *See* La.Code Crim.P. art. 922;[2] *State v. Hollier*, 09-1084 (La.App. 3 Cir. 4/7/10), 37 So.3d 466, *writ denied*, 10-1037 (La. 12/10/10), 51 So.3d 722.

---

[2]Louisiana Code of Criminal Procedure Article 933 provides that a judgment becomes final on appeal following certain delays:

> A. Within fourteen days of rendition of the judgment of the supreme court or any appellate court, in term time or out, a party may apply to the appropriate court for a rehearing. The court may act upon the application at any time.
>
> B. A judgment rendered by the supreme court or other appellate court becomes final when the delay for applying for a rehearing has expired and no application therefor has been made.
>
> C. If an application for a rehearing has been made timely, a judgment of the appellate court becomes final when the application is denied.
>
> D. If an application for a writ of review is timely filed with the supreme court, the judgment of the appellate court from which the writ of review is sought becomes final when the supreme court denies the writ.

Obviously, Defendant perfected an appeal to this court in reference to his habitual offender adjudication. Clearly, Defendant's right to appeal his sentence was not prejudiced by the trial court's statement. However, the statement was erroneous because "La.Code Crim.Proc. art. 930.3, which sets out the exclusive grounds for granting post-conviction relief, provides no basis for review of claims of excessiveness or other sentencing error post-conviction." *State ex rel. Melinie v. State*, 93-1380, p. 1 (La. 1/12/96), 665 So.2d 1172, 1172. Hence, the trial court misinformed Defendant that he had the right to seek post-conviction relief concerning claims about his habitual offender adjudication and sentence. Accordingly, Defendant is entitled to notice of the proper delays set forth by La.Code Crim.P. art. 930.8 for filing an application seeking post-conviction relief on his underlying distribution of methadone conviction, and we order the trial court to provide Defendant with written notice thereof.

Defendant also alleges that it was an error patent for the trial court to resentence him as an habitual offender without vacating his original sentence. Defendant asserts that, although the trial court referred to the originally imposed sentence, it failed to vacate it. Defendant argues that the failure to vacate the original sentence nullified the multiple offender penalty and that even though the minutes of court state that the first sentence was vacated, the transcript prevails. Defendant asserts that he was prejudiced by this because the trial court failed to credit him for time served on the original sentence and because nothing in the record shows that the start date of the enhanced sentence is the same as the originally imposed sentence. Defendant contends, therefore, that this court should vacate his habitual offender penalty and remand for resentencing.

The State responds that the trial court properly vacated Defendant's prior sentence when it imposed the habitual offender penalty.

4

The record shows that, in sentencing Defendant as an habitual offender, the trial court properly set aside the penalty previously imposed for Defendant's underlying conviction for possession of methadone:

> THE COURT: Well, in accordance with L.A.R.S. 15:529.1 (C)(i), which Mr. Hollier has been convicted of four (4) or more felonies, the mandatory minimum sentence is twenty (20) years. **I will set aside a conviction and sentence of -- what's the docket number?**
>
> **MR. HAMILTON: Your Honor, 71404.**
>
> **THE COURT: 71404**, and sentence Mr. Hollier in accordance with this statute. . . . I will give you the twenty (20) years being the minimum sentence required. . . .

(Emphasis added.) Therefore, the trial court vacated the originally imposed sentence prior to sentencing Defendant as a multiple offender, and there is no merit to Defendant's argument on this issue.

*Sufficiency of the Evidence*

Defendant claims that there was insufficient evidence to adjudicate him as an habitual offender. Defendant argues that the State failed to prove that he was properly *Boykinized* in the guilty pleas acting as predicate convictions. Defendant maintains that he met his burden of proving that there were constitutional defects in his prior guilty pleas.

The State asserts that a bill of information, certified minutes of court, and a transcript of the guilty plea are sufficient to prove the predicate offense. The State further asserts that it produced the bill of information, minutes of court, plea form, and a *Boykin* transcript for each of Defendant's predicate offenses. The State submits, therefore, that it introduced sufficient evidence to support Defendant's habitual offender adjudication.

The Louisiana Supreme Court has discussed the burden of proof in habitual offender proceedings that involve the use of guilty pleas as predicate offenses:

> If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas

and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to a trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights.

*State v. Shelton*, 621 So.2d 769, 779-80 (La.1993) (footnotes omitted).

At the habitual offender hearing, the prosecution called Lieutenant Charles Cain as its first witness. Lieutenant Cain was employed by the Acadia Parish Sheriff's Office as an AFIS, automated fingerprint identification system, administrator. Lieutenant Cain is also a latent fingerprint examiner who examines ten-print cards looking for certain characteristics. Lieutenant Cain had been doing this for fifteen years and received at least forty hours of training each year. Lieutenant Cain had previously testified as an expert fingerprint analyst five or six times.

Lieutenant Cain identified State's Exhibit No. 1 as the fingerprints taken from Defendant. Defendant's birth date was noted as April 11, 1958, and his social security number was given. Lieutenant Cain identified State's Exhibit No. 2 as the card he used in fingerprinting Defendant the morning of the hearing. The fingerprints in State's Exhibit No. 2 matched those in State's Exhibit No. 1.

On cross-examination, Lieutenant Cain stated that he did not take the fingerprints in State's Exhibit No. 1; however, he verified that the prints were the correct ones by checking the State SID number and by checking the photograph on the back of the fingerprint card. Defendant's picture was on the back of the card introduced as State's Exhibit No. 1.

6

The State's next witness was Brad Poole, who was employed by the Department of Public Safety and Corrections, Probation, and Parole. At the time of the hearing, Mr. Poole had been so employed for ten years. Mr. Poole was familiar with Defendant. Defendant's birth date was noted as April 11, 1958. Mr. Poole had supervised Defendant dating back to 2002. In 2002, Defendant was under parole supervision for Acadia Parish Docket Numbers 51,004 (possession of crack cocaine); 51,375 (simple burglary of an inhabited dwelling); and 51,376 (unauthorized entry of an inhabited dwelling). Mr. Poole also supervised Defendant for Acadia Parish Docket Numbers 55,297 (false representation of a CDS); 55,298 (false representation of a CDS); and 61,976 (possession of oxycodone).

At this point, the State filed State's Exhibit No. 3 into the record. This was a copy of Defendant's rap sheet. The State next asked the trial court to take judicial notice of Defendant's conviction in Acadia Parish Docket Number 71,404 for distribution of methadone. The record of the underlying conviction in the instant case shows that Defendant, born April 11, 1958, and identified by social security number, was charged with and convicted of unlawfully distributing methadone on or about August 21, 2006. The State then introduced State's Exhibit No. 4, containing the bill of information, guilty plea form, minutes of court, and certified guilty plea transcript for each of Defendant's prior felony convictions, into evidence.

State's Exhibit No. 4 included bills of information in Acadia Parish Docket Numbers 51,004; 51,375; and 51,376. The first bill alleged that on or about October 23, 1995, Defendant illegally possessed crack cocaine in violation of the Uniform Controlled Dangerous Substance Act. The second bill alleged that, on or about January 20, 1996, Defendant committed simple burglary of a residence on Burton Guidry Road in Church Point, Louisiana. The third bill charged that, on or about January 22, 1996, Defendant committed simple burglary of a residence on North Corporation Street in Church Point, Louisiana. State's Exhibit No. 4 incorporated a

7

"Plea of Guilty and Waiver of Rights Form" for each of Acadia Parish Docket Numbers 51,004; 51,375; and 51,376. The plea forms, altogether, showed Defendant pled guilty to attempted possession of crack cocaine, unauthorized entry of an inhabited dwelling, and simple burglary on September 23, 1996. Each of those forms advised Defendant of his rights to a trial by a six-person jury, to refrain from testifying, to confront and cross-examine the witnesses against him, and to use compulsory process to require witnesses to testify on his behalf. Each form was signed by Defendant and witnessed by his attorney. By signing the forms, Defendant indicated that he was knowingly and intelligently waiving those rights. The forms showed that the trial court ordered Defendant to serve two years at hard labor, suspended, for attempted possession of crack cocaine; three years at hard labor, suspended, with three years of active supervised probation, for unauthorized entry of an inhabited dwelling; and three years at hard labor, suspended, with three years of active supervised probation, for the simple burglary conviction.

Additionally, State's Exhibit No. 4 contained a copy of the minutes of court for September 23, 1996, in reference to Acadia Parish Docket Numbers 51,004; 51,375; and 51,376. It showed that Defendant was present in court with his attorney. The minutes stated that the trial court informed Defendant of his rights to counsel, to trial by jury, to compulsory process, as well as to confront and cross-examine witnesses. The minutes further indicated that Defendant waived his rights and entered guilty pleas to attempted possession of crack cocaine, simple burglary of an inhabited dwelling, and unauthorized entry into an inhabited dwelling. The September 23, 1996, minutes of court also revealed that the trial court ordered Defendant to serve two years at hard labor, suspended, with two years of active supervised probation, in Acadia Parish Docket Number 51,004; to serve three years at hard labor, suspended, with three years of active supervised probation, in Acadia Parish Docket Number

51,375; and to serve three years at hard labor, suspended, with three years of active supervised probation, in Acadia Parish Docket Number 51,376.

State's Exhibit No. 4 also included a "TRUE COPY OF THE ORIGINAL" transcript of the September 23, 1996 guilty plea hearing held in reference to Acadia Parish Docket Numbers 51,004; 51,375; and 51,376. Defendant reported that he was thirty-eight years old and recited his social security number. Defendant indicated that he had read and understood the three "Plea of Guilty and Waiver of Rights Form[s]." The trial court informed Defendant that he had a right to trial by jury, the right to plead "not guilty," the right to counsel, the right to confront the witnesses called at trial, the right to subpoena witnesses to testify in his defense, the right to testify, and the right to refrain from testifying. The trial court then explained that Defendant would waive those rights if he chose to plead guilty, and Defendant responded by indicating that he understood his rights and wished to proceed with his guilty plea. Defendant then pled guilty and acknowledged his factual guilt of all three charges. Finally, the trial court sentenced Defendant to the penalties previously mentioned and ordered all of the sentences to run concurrently.

State's Exhibit No. 4 also incorporated bills of information in Acadia Parish Docket Numbers 55,297 and 55,298. They alleged that on or about March 12 and 14, 1998, Defendant obtained Percocet by using forged prescriptions. State's Exhibit No. 4 contained a "Plea of Guilty and Waiver of Rights Form" for Acadia Parish Docket Numbers 55,297 and 55,298. The plea form, which showed Defendant pled guilty to two counts of forging prescriptions on January 4, 2000, advised Defendant of his rights to a trial by a six-person jury, to refrain from testifying, to confront and cross-examine the witnesses against him, and to use compulsory process to require witnesses to testify on his behalf. The form was signed by Defendant and witnessed by his attorney. By signing the form, Defendant indicated that he was knowingly and

intelligently waiving those rights. The form showed that the trial court ordered Defendant to serve two years at hard labor with credit for time served.

Additionally, State's Exhibit No. 4 included a copy of the minutes of court for January 24, 2000, in reference to Acadia Parish Docket Numbers 55,297 and 55,298. It showed that Defendant was present in court with his attorney. The minutes stated that the trial court informed Defendant of his rights to counsel, to trial by jury, to compulsory process, as well as to confront and cross-examine witnesses. The minutes further indicated that Defendant waived his rights and pled guilty. The minutes of court also revealed that the trial court ordered Defendant to serve two years at hard labor with credit for time served. State's Exhibit No. 4 incorporated a "TRUE COPY OF THE ORIGINAL" transcript of the January 24, 2000 guilty plea hearing held in reference to Acadia Parish Docket Numbers 55,297 and 55,298. Defendant reported that he was forty-one years old and recited his social security number. Defendant stated that his attorney had discussed his constitutional rights with him and that he understood he was waiving those rights by pleading guilty. Defendant said that he had gone over his "Plea of Guilty and Waiver of Rights Form" with his attorney, discussed everything in the form with his attorney, had signed the form in his attorney's presence, and understood the contents of the form. The trial court informed Defendant that he had certain rights and that he would be waiving those rights by pleading guilty: the right to representation by counsel, the right to trial by jury, the right to confront the witnesses called at trial, the right to call witnesses to testify in his defense, the right to testify, and the right to refrain from testifying. In response, Defendant affirmed that he understood those rights and that he waived them. Defendant then pled guilty, and the trial court ordered him to serve two years at hard labor, directed the penalty to run concurrently with any other sentence, and credited Defendant with time served.

State's Exhibit No. 4 also contained a bill of information in Acadia Parish Docket Number 61,976. It alleged that on or about March 15, 2002, Defendant illegally distributed oxycodone, a Schedule II Controlled Dangerous Substance. State's Exhibit No. 4 included a "Plea of Guilty and Waiver of Rights" form" for Acadia Parish Docket Number 61,976. The form showed that Defendant's birth date was April 11, 1958, and showed his social security number. The plea form, which showed that Defendant pled guilty to possession of oxycodone on April 28, 2003, advised Defendant of his rights to a trial by a six-person jury, to refrain from testifying, to confront and cross-examine the witnesses against him, and to use compulsory process to require witnesses to testify on his behalf. The form was signed by Defendant and witnessed by his attorney. By signing the form, Defendant indicated that he was knowingly and intelligently waiving those rights. The form showed that the trial court ordered Defendant to serve three years at hard labor.

Additionally, State's Exhibit No. 4 incorporated a copy of the minutes of court for April 28, 2003, in reference to Acadia Parish Docket 61,976. It showed that Defendant was present in court with his attorney. The minutes stated that the trial court informed Defendant of his rights to counsel, to trial by jury, to compulsory process, as well as to confront and cross-examine witnesses. The minutes further indicated that Defendant waived his rights and pled guilty. The minutes of court revealed that, in accordance with the plea agreement, the trial court ordered Defendant to serve three years at hard labor with credit for time served. State's Exhibit No. 4 contained a "TRUE COPY OF THE ORIGINAL" transcript of the April 28, 2003 guilty plea hearing held in reference to Acadia Parish Docket Number 61,976. Defendant indicated he had gone over his "Plea of Guilty and Waiver of Rights Form" with his attorney, had read the form, and had understood the information contained in the form. The trial court informed Defendant that he had certain rights and that he would be waiving those rights by pleading guilty: the right to representation by

counsel, the right to trial by judge or jury, the right to refrain from testifying, and the right to cross-examine witnesses called against them at trial. In response, Defendant affirmed that he understood those rights. Defendant then pled guilty, and the trial court ordered him to serve three years at hard labor.

Thus, the State submitted evidence showing that, in addition to the underlying felony of possessing methadone, Defendant had pled guilty to six prior felonies. For each of the predicate felony offenses, Defendant did in fact plead guilty, was represented by counsel, and indicated that he understood and waived his right to trial, his right against self-incrimination, and his right to call, confront, and cross-examine witnesses.

Accordingly, this assignment of error is without merit.

*Ineffective Assistance of Counsel*

Defendant contends that the trial court erred in failing to consider his *pro se* motions alleging ineffective assistance of counsel prior to conducting the habitual offender hearing. Defendant alleges that prior to his habitual offender hearing, he filed motions alleging ineffective assistance of counsel based on a total breakdown of communication sufficient to create a conflict of interest and asking for appointment of new counsel. Defendant asserts that, although the trial court ordered a hearing on the motions, it failed to address them.

The State responds that the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief. The State further asserts that there is insufficient evidence in the record for this court to review the merits of Defendant's ineffective assistance of counsel claim.

The record shows that the defense filed a "Motion to Quash the Habitual Offender Bill of Information" as well as a "Response and Objection to Habitual Offender Bill of Information Pursuant to L.R.S. 15:529.1" with the trial court on May 8, 2009. In this motion, defense counsel urged that the prior guilty pleas could not be

used as predicate felonies for an habitual offender adjudication because the earlier pleas were obtained unconstitutionally and because Defendant was not fully advised of his *Boykin* rights in connection to those pleas. On the same date, defense counsel also filed a "Motion for Discovery, Inspection and Bill of Particulars Re: Habitual Offender Bill of Information." In this motion, defense counsel requested a copy of Defendant's criminal arrests and convictions, a copy of the commitment records including the information regarding Defendant's discharge from his sentences, a transcript of each guilty plea, a copy of each fingerprint card with the address of the person who fingerprinted Defendant each time, a copy of all mug shots, a copy of each of Defendant's bills of information, a copy of each plea form, a copy of the minutes of court for each of Defendant's earlier convictions, the arrest register for each conviction, and notice of any pardons Defendant received from the governor.

The record shows that, on January 21, 2011, Defendant filed a *pro se* "Motion to Quash Multiple Offender Bill" alleging, among other things, that difficulties had arisen between him and defense counsel as follows:

3. The defense counsel and the defendant are experiencing an irreparable conflict of interest with respect to the defense of the habitual offender information. The differences are such that the defendant and counsel have stopped communicating regarding the upcoming proceedings;

4. The defendant states a belief the counsel's performance are [sic] not within the wide range of professional competent assistance, counsel has failed to investigate compliance with Boykin regarding the convictions listed in a multiple offender bill;

5. The defendant states a belief that his previous convictions did not include a valid waiver of all the Boykin rights;

6. The defendant states a belief that he was not represented by counsel who informed him of all his Boykin rights in the prior proceedings;

7. Furthermore, the defendant was not informed of his right to remain silent, the right of the compulsory process, the right to cross examine witnesses, the right to appeal any adverse decisions, the right to the assistance of counsel if unable to afford the same on direct appeal;

13

8. The defendant has informed defense counsel that the presumption of regularity of the judgment are in question, however, counsel has failed to file written objections and/or obtain sufficient information to challenge the constitutional basis for the previous conviction's [sic];

9. The defendant states a belief that the habitual offender statute shifts the burden of proof upon the indigent defendant impermissibly;

10. The defendant states a belief that he is entitled to advance notice prior to trial of the intent to seek enhancement and that the failure to so conform violates the [U]nited States Constitution;

11. The defendant states a belief that he is entitled to an expert witness to refute the allegations that he is one and in the same person listed in the offenses contained in the multiple offender bill of information.

WHEREFORE, the defendant respectfully prays that [the] Court Quash the Multiple Offender Bill as being contrary to the Constitutions of the United States and Louisiana.

As evidenced by Defendant's prayer for relief, Defendant was neither alleging that he had been prejudiced by some deficient performance by his attorney nor seeking appointment of new counsel or permission to proceed *pro se* based on ineffective assistance of counsel. Instead, Defendant sought only the dismissal of the habitual offender bill. This was the only *pro se* motion contained in the record that was filed after the multiple offender bill and before the habitual offender hearing. There was no motion seeking relief that would cure ineffective assistance of counsel. Therefore, on appeal, Defendant has mischaracterized the nature of the motion.

Furthermore, the trial court's ruling adjudicating Defendant to be a multiple offender implicitly denied both the attorney-filed and the *pro se* motions to quash. It is true that the record contains neither minutes of court nor a transcript for a hearing wherein these motions were overtly ruled on by the trial court. However, at the January 26, 2011 habitual offender hearing, Defendant's attorney argued that "[b]oth the evidence for the motions are the minutes that are going to be introduced later in the proceeding, clearly indicate that there was no *[B]oykinization* of these." Thus, defense counsel urged that the motions should be resolved based upon the evidence introduced to prove Defendant's multiple offender status. By adjudicating Defendant

14

a multiple offender, we find that the trial court implicitly denied both the attorney-filed and the *pro se* motions to quash the habitual offender bill.

Accordingly, this assignment of error is without merit.

## DECREE

For all of the foregoing reasons, Defendant's adjudication as an habitual offender is affirmed. However, the matter is remanded to the trial court with instructions to provide Defendant with written notice of the delays set forth in La.Code Crim.P. art. 930.8 for seeking post-conviction relief on his conviction for distribution of methadone. The trial court is further ordered to correct the sentencing minutes to strike the provision that the sentence be without benefit of parole, probation, or suspension of sentence.

**HABITUAL OFFENDER ADJUDICATION AFFIRMED; REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.